**UNITED STATES DISTRICT COURT FOR THE**
**DISTRICT OF MINNESOTA**

---

**Bradley J. Rephen,** **Civil No. 06-0155 (DSD/JJG)**

**Plaintiff/Counter-Defendant,**

**v.** **ORDER**

**Mark Pitzele,**

**Defendant/Counter-Plaintiff,**

**v.**

**Law Offices of Bradley J. Rephen, PC,**

**Third-Party Defendant.**

---

APPEARANCES

Paul Sortland for Bradley J. Rephen and Law Offices of Bradley J. Rephen, PC

Michael Phillips and William Moran for Mark Pitzele

---

JEANNE J. GRAHAM, United States Magistrate Judge

The above entitled matter came on for hearing on March 15, 2006, before the undersigned United States Magistrate Judge on Plaintiff's Motion to Disqualify Counsel (Doc. No. 23). Plaintiff, Bradley J. Rephen ("Rephen"), seeks an order from this Court disqualifying Defendant Mark Pitzele's ("Pitzele") lead counsel, McGuire Woods LLP ("MW") and MW attorneys Joel H. Spitz ("Spitz") and Michael R. Phillips

("Phillips"). This case has been referred to the undersigned for resolution of pretrial matters pursuant to 28 U.S.C. § 636 and D. Minn. LR 72.1.

## I. INTRODUCTION

The underlying dispute in this action concerns a failed business association between Rephen and Pitzele relating to their law firm, Law Offices of Pitzele & Rephen ("P&R"). Created in 2004, the law firm was dissolved after a series of financial-related difficulties and disagreements. Numerous allegations have been made by both sides regarding the operation of P&R, as well as the circumstances and agreements effectuating P&R's dissolution. Rephen has brought claims of fraud, misrepresentation, tortious interference of contract, breach of contract and prima facie tort against Pitzele. Pitzele has countered with claims of breach of contract, conversion, tortious interference with business relationship, defamation and breach of implied covenant of good faith and fair dealing against Rephen and the Law Office of Bradley J. Rephen, PC. Pitzele also seeks injunctive relief.

This action was originally filed in the United States District Court for the Southern District of New York. Upon a motion by Pitzele, the case was transferred to the District of Minnesota. The case is currently in the pretrial discovery phase of the litigation process. Plaintiff now seeks disqualification of MW and attorneys Spitz and Phillips based upon his claims that he disclosed confidential information to Spitz and Phillips during prior legal representation.

## II. RELEVANT FACTS

Accompanying the motion papers are affidavits sworn by Rephen, Pitzele, Spitz and Phillips. The Court is also in receipt of the sworn affidavit of Carol Bauman, a former receptionist at the Law Office of Pitzele & Rephen. There is a great deal of disagreement between the affiants on many facts and

circumstances relating to the prior relationships, if any, between Rephen and Spitz and/or Rephen and Phillips. After a review of the undisputed facts, the Court will briefly set forth the conflicting positions of the parties.

**A. Relevant Undisputed Facts**

Early in 2004, Rephen, an attorney living and practicing in New York, contacted Pitzele, an attorney living and practicing in Minnesota to discuss the possibility of forming a joint law practice that would focus on collections. After some discussion, the Law Offices of Pitzele & Rephen were formed as a Minnesota corporation. Pitzele and Rephen executed a Shareholder Agreement on June 1, 2004. The law firm operated out of Minnesota, and Pitzele managed the daily operations. Rephen remained in New York, but routinely visited the Minnesota office.

The Chicago law firm of McGuire Woods was retained by P&R. MW attorney Spitz had a prior personal relationship with Pitzele. In June 2005, Spitz represented P&R on an EEOC matter filed by a former P&R employee. Spitz billed P&R a total of $862.50 for his work on this matter, consisting of 2.5 hours of attorney time for attending a mediation on P&R's behalf and for preparing a settlement agreement. Spitz also advised P&R on issues regarding sexual harassment claims made by one P&R employee against another, but Spitz did not bill P&R for these legal services.

MW now represents defendant Pitzele in the current matter before the Court, with Spitz and Phillips identified as attorneys of record and admitted *pro hac vice*. Shortly after MW began its representation of Pitzele in this action, Rephen sent a letter to Spitz alleging that a conflict of interest existed in MW's representation in this case, and making mention of MW's retention by P&R regarding "a certain

employment matter." The letter essentially stated that MW should cease its representation of Pitzele in this matter due to the conflict.

**B. Disputed Facts**

The parties offer vastly conflicting versions of the extent of the relationship between P&R and MW, as well as the relationship and personal contact between Rephen and Spitz.

1. <u>Rephen's Version of Events</u>

According to Rephen's affidavits, MW, and specifically Spitz, were significantly involved in the legal representation of P&R in employment matters, and Spitz was also involved with Rephen regarding the difficulties he was experiencing with his then partner, Pitzele. P&R retained and consulted with MW attorneys Spitz and Phillips, and used the services of MW on at least two dozen occasions regarding employment matters. Spitz advised P&R on various employment matters including termination disputes, pay disputes, and issues relating to vacation days and sick days, as well as on matters relating to unemployment, allegations of discrimination and compliance with state and federal laws.

According to Rephen's affidavits, in June of 2005, during a trip to Minneapolis to attend a mediation on behalf of P&R, Spitz met with Rephen to discuss the problems Rephen was having at P&R with Pitzele. Moreover, Spitz attempted to informally mediate between Pitzele and Rephen regarding these issues. Part of these discussions included the ways of achieving an agreement with Pitzele that would allow Pitzele to maintain a conditional relationship with Rephen while also maintaining his own separate operation in Minnesota. Spitz conducted the informal mediation on behalf of Pitzele, Rephen, P&R and its successors and assigns.

Rephen's affidavits state that during the course of these conversations and consultations with P&R and Rephen, MW attorneys were made privy to confidential information concerning both Rephen and Pitzele, and concerning P&R. Consequently, MW obtained "many facts, issues, perspectives, strategies" and Rephen's "personal concerns that serve as the basis for the current action." Rephen has disclosed "a number of secrets to the firm, and relied upon their advice with respect to the issues involving Mark Pitzele." Rephen also argues that members of MW are obvious witnesses to be called at trial.

2. Spitz's, Phillip's and Pitzele's Version of Events

According to the affidavit of Spitz, he has never met Rephen, and had not spoken to Rephen in person or on the telephone prior to the commencement of this action. All of Spitz contacts with P&R during his representation of P&R were with Pitzele. The EEOC matter was the only matter for which Spitz or MW has billed P&R. Spitz did not advise P&R regarding any other employment issues or provide P&R with any other legal services.

According to the affidavit of Spitz, when Spitz traveled to Minneapolis to attend the mediation in June 2005, he did not meet with or speak to Rephen. Spitz never acted as an "informal mediator" between Pitzele and Rephen concerning any issues relative to P&R. Rephen has never disclosed confidential or privileged information to Spitz at any time. Spitz has never been made aware of any facts, issues, perspectives, strategies or personal concerns of Rephen concerning his disputes with Pitzele.

According to the affidavit of Phillips, he has never represented P&R in any capacity or consulted P&R on legal matters. Phillips had never heard of P&R until he was retained by Pitzele in connection with the instant action. Phillips has never spoken with Rephen in person or by telephone. Phillips has never met Rephen and had not heard of him prior to his involvement in this lawsuit. Phillips has never represented

Rephen individually at any time, and Rephen has never disclosed any confidential or privileged information to Phillips.

According to the affidavit of Pitzele, he did not discuss the breakup of P&R with anyone at MW until after he was served with a summons in the instant matter. Pitzele has never been involved in a meeting in person or on the telephone with Rephen and Spitz or with Rephen and Phillips.

## III. DISCUSSION

At the outset, the Court notes its surprise over the vastly conflicting and contradictory factual statements in the various sworn affidavits, and expresses it considerable concern over what must be a lack of veracity in some of the submitted affidavits. Although an evidentiary hearing would allow the Court to make further credibility determinations concerning these affidavits, the Court finds such an evidentiary hearing to be unnecessary for the resolution of the present motion.[1] For the reasons discussed below, the Court finds Rephen has failed to meet his burden of demonstrating that disqualification is warranted in this case.

### A. Standard for Disqualification Analysis

Minnesota Rules of Professional Conduct directly address conflicts of interest. Whether an attorney should be disqualified based upon an alleged conflict of interest is governed by Rule 1.9 of the Minnesota Rules of Professional Conduct. Prod. Credit Ass'n of Mankato v. Buckentin, 410 N.W.2d 820, 823 (Minn.1987). Rule 1.9 provides:

---

[1] Mr. Phillips appeared before this Court at the hearing on behalf of Mr. Pitzele. During the hearing, Mr. Phillips verbally attested to the accuracy of the statements made in his affidavit. However, neither Mr. Rephen or Mr. Spitz were present at the hearing. (The Court notes that the attendance of Mr. Rephen and Mr. Spitz at the hearing was not required.)

> A lawyer who has formerly represented a client in a matter shall not thereafter:
>
> (a) represent another person in the same or substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation; or
>
> (b) use information relating to the representation to the disadvantage of the former client except as Rule 1.6 would permit with respect to a client or when the information has become generally known.

Minn. R. Prof. Conduct 1.9.

Imputed conflicts of interests are governed by Rule 1.10. Under Rule 1.10(a), while lawyers are associated in a firm, none of them shall knowingly represent a client when any of them practicing alone would be prohibited from doing so under Rules 1.7 or 1.9, unless the prohibition is based on the personal interests of a prohibited lawyer and does not present a significant risk of materially limiting their representation of the client by the remaining lawyers of the firm. See Minn. R. Prof. Conduct 1.10.

"The party seeking the disqualification of opposing counsel bears the burden of showing disqualification is warranted" and "must satisfy a high standard of proof." Olson v. Snap Products, Inc., 183 F.R.D. 539, 542 (D.Minn.1998) (citations omitted). However, "any legitimate doubts which are created by the movant's proffer, must be resolved in favor of disqualification." Id. Due to the potential for abuse by opposing counsel, disqualification motions should be subject to particularly strict scrutiny." Harker v. C.I.R., 82 F.3d 806, 808 (8th Cir.1996).

**B. Attorney-Client Relationship**

To succeed in his motion for disqualification in this case, Rephen must first demonstrate that he is a current or former "client" of MW, Spitz or Phillips. There is no suggestion here that Rephen is a current client of MW, Spitz or Phillips, so the analysis focuses on whether Rephen has demonstrated a prior

attorney-client relationship with MW, Spitz or Phillips. If Rephen does not so demonstrate, he cannot successfully raise a disqualification claim in this case on a theory of conflict of interest under Minnesota Rules of Professional Conduct 1.9 or 1.10.

In Minnesota, an attorney-client relationship can be created through contract or tort theory. Gramling v. Mem'l Blood Ctrs., 601 N.W.2d 457, 459 (Minn.Ct.App.1999). The contract theory holds that parties create an attorney-client relationship if they either explicitly or implicitly form a contract for legal services. Id. Under the tort theory of representation, an attorney-client relationship exists "whenever an individual seeks and receives legal advice from an attorney in circumstances in which a reasonable person would rely on such advice." Id. at 460 (citing TJD Dissolution Corp. v. Savoie Supply Co., 460 N.W.2d 59, 62 (Minn.App.1990)).

1. Attorney-Client Relationship by Contract Theory

Under the contract theory, the plaintiff must show either an express or implied contract of legal representation. Id. Important in the context of this case is the fact that MW was retained by P&R to represent the law firm. It is well-settled under Minnesota law that an attorney who represents a corporation or similar entity owes a duty to the entity, not the entities constituents.[2] See Minn. R. Prof. Cond. 1.13; see also Humphrey v. McLaren, 402 N.W.2d 535, 540 (Minn.1987) (noting that in representing a corporation against one of its officers or employees, corporate counsel's "allegiance is to the corporation").

Accordingly, for Rephen to demonstrate an attorney-client relationship by contract, he must provide proof that he personally entered into a legal services contract with MW, Spitz or Phillips. While Rephen

[2]The Comments to Minnesota Rule of Professional Conduct 1.13 define "constituents" as officers, directors, employees, shareholders.

may prove such a contract was formed expressly or implicitly, Rephen cannot simply point to representation of P&R by MW, Spitz or Phillips as his evidence of his own personal legal services contract with MW, Spitz or Phillips. Instead, Rephen must show that he personally requested legal advice, or provide proof that legal services were rendered to him personally by Spitz, Phillips or another MW attorney. See Manion v. Nagin, 394 F.3d 1062, 1069 (8th Cir. 2005) (providing employee legal advice about personal interest in company was beyond the scope of attorney's job as attorney for the company). Because Rephen has not asserted any specific personal contact or communication between himself and Phillips, or between himself and another MW attorney, the Court focuses its analysis here on the professional relationship, if any, between Rephen and Spitz.

The Court finds that Rephen has failed to sufficiently demonstrate the formation of an attorney-client relationship with Spitz by either express or implied contract. Rephen has offered nothing more than hotly contested assertions that (1) he sought counsel from Spitz regarding his business-related problems with Pitzele; (2) he shared confidences regarding these problems with Spitz; and (3) Spitz acted as an informal mediator between himself and Pitzele. Rephen offers no concrete supporting evidence to assist this Court in determining whether any such communications occurred, such as telephone records, legal bills, notes, paper correspondence, or an actual agreement, or would show the formation of a contact for personal legal services between himself and MW or Spitz.[3] In the absence of any supporting evidence, the Court finds

---

[3]Rephen submitted the sworn affidavit of Carol Bauman, a former receptionist at the Law Office of Pitzele & Rephen in support of his contention that Spitz had significant contacts with the firm. However, the fact that Ms. Bauman attests that the switchboard at P&R received numerous telephone calls from Spitz during times relevant to this case does not prove that Spitz's calls were related to P&R and Spitz's representation of P&R. There is no dispute that Spitz had a personal relationship with Pitzele dating back to before the formation of P&R.

that Rephen has failed to sufficiently demonstrate the formation of an attorney-client relationship through an express or implied contract between Rephen and Spitz, between Rephen and Phillips or between Rephen and any other MW attorney.

2. Attorney-Client Relationship by Tort Theory

The Court next considers whether an attorney-client relationship was formed under the tort theory. Here, Rephen must demonstrate that he personally received legal advice from Spitz, or another MW attorney, under circumstances which made it reasonable for Rephen to rely on that advice. See Gramling, 601 N.W.2d at 459 (citing TJD Dissolution Corp. v. Savoie Supply Co., 460 N.W.2d 59, 62 (Minn.App.1990)). Minnesota courts require a showing that the attorney rendered legal advice, not necessarily at someone's request, under circumstances which made it reasonably foreseeable to the attorney that the person might be injured if the advice is given negligently. TJD, 460 N.W.2d at 62. An attorney's duty to exercise reasonable care in dispensing legal advice arises not from contract, but from the position the attorney occupies. Id.

Thus, for the Court to find an attorney-client relationship under tort theory in this case, Rephen must show evidence of legal advice flowing from Spitz or MW to Rephen that was independent of Spitz's duties as corporate counsel for P&R.[4] The burden is on Rephen to demonstrate the rendering of personal legal advice, and that it was reasonable for him to rely on such advice. The Court has carefully reviewed the affidavits and their numerous contradictory affirmations, and concludes that under any version of facts

[4] The Minnesota Rules of Professional Conduct permit, under certain circumstances, corporate counsel to also act as the attorney for an officer or employee of the corporation. Minn. R. Prof. Cond. 1.13(f). These circumstances include obtaining consent from the client with adverse interests.

and circumstances recounted therein, Rephen cannot met his burden of proving an attorney-client relationship under the tort theory.

If the Court were to take the facts in the light most favorable to Rephen, and assume that Spitz did provide advice to Rephen that amounted to personal legal advice and that Spitz did engage in mediation discussions between Rephen and Pitzele concerning their business disputes relating to P&R,[5] such a finding would only satisfy the first part of the requirements necessary for finding the formation of an attorney-client relationship under the tort theory.[6] The Court would also have to find that Rephen's reliance on the legal advice he received from Spitz was reasonable reliance.

As previously stated, an attorney-client relationship will be found under tort theory when legal advice is rendered in circumstances in which a reasonable person would rely on such advice. Again, assuming, without so finding, that Spitz rendered legal advice to Rephen personally regarding his personal stake in P&R and his concern regarding business-related actions by Pitzele that would harm that personal

---

[5]The Court makes this assumption for the purposes of the instant analysis and does not make any actual finding regarding the veracity of the contents of the affidavits submitted by Rephen.

[6] If the Court were to credit Spitz's version of events, the Court's analysis under tort theory would be brief. The Court would find the lack of any contact whatsoever between Rephen and Spitz during the relevant time period would lead the Court to conclude that Spitz's legal services were limited to his representation of P&R, and that Spitz never rendered advice of any kind to Rephen that could be construed as establishing a separate attorney-client relationship with Rephen under tort theory. While contact between the plaintiff and the attorney is not mandatory in finding representation under the tort theory, courts have considered contact between the plaintiff and the attorney as a relevant factor. <u>See Admiral Merchants Motor Freight, Inc. v. O'Connor & Hannan</u>, 494 N.W.2d 261, 266 (Minn.1992)(representation found where law firm rendered legal advice directly to plaintiff's vice president); <u>Gramling</u>, 601 N.W.2d at 460 (relationship not found where plaintiff did not seek legal advice from attorney).

stake, the Court finds that it would not be reasonable for Rephen to rely on any such legal advice from Spitz under the circumstances in which the advice would have been given by Spitz.

First, Spitz was P&R's retained counsel. Accordingly, Spitz's duty was to the law firm as a corporate entity. Rephen's problems and concerns with Pitzele concern his allegations of degradation of law firm's business and financial interests by Pitzele. The Court finds that there would be an inherent conflict between Rephen's personal interest in P&R and the interests of the law firm as a corporate entity under these circumstances. Therefore, the Court concludes that it would not be reasonable for Rephen to attempt to protect his personal stake in the P&R law firm in the face of alleged financial and managerial misconduct by his partner by seeking legal advice from counsel retained to represent and protect the best interests of the law firm.

Second, the fact that Rephen is a licensed attorney with half ownership in P&R is significant. As an attorney, Rephen is charged with having knowledge of the rules of his profession, including those pertaining to attorney-client conflicts. The Court concludes that it was not reasonable for Rephen to believe that Spitz could give him personal legal advice relating to his interests in P&R while Spitz was also representing the law firm, especially absent the express permission of P&R. Consequently, the Court finds that it was not reasonable for Rephen to rely on any legal advice rendered to Rephen personally by Spitz concerning Rephen's business problems with Pitzele.

Accordingly, even if the Court were to credit Rephen's version of events regarding his communications and interactions with Spitz, because Rephen cannot demonstrate reasonable reliance on any legal advice he received from Spitz, the Court finds Rephen and Spitz could not have formed an

attorney-client relationship under tort theory. Moreover, there is no specific evidence before the Court that any other MW attorney rendered personal legal advice to Rephen.

## IV. CONCLUSION

The Court finds that Rephen has failed to establish the existence of a prior attorney-client relationship between himself and MW, Spitz or Phillips. In light of the Court's finding that Rephen has not been a client of MW, Spitz or Phillips, the Court finds it unnecessary to engage in further analysis of a potential attorney conflict under Rules 1.9 or 1.10 in this case. Under the strict scrutiny standards established by the Courts of Minnesota, this Court concludes that Rephen has failed to meet his burden of demonstrating that withdrawal of MW, Spitz and or Phillips is warranted in this case.[7]

Accordingly, based upon all the files, records, briefs and proceedings herein, **IT IS HEREBY ORDERED** that Plaintiff's Motion to Disqualify Counsel (Doc. No. 23) is **DENIED**.

Dated: March 22, 2006

s/Jeanne J. Graham

JEANNE J. GRAHAM
United States Magistrate Judge

[7] The Court's holding is not intended to foreclose the possibility of a future motion by Rephen, that could include an evidentiary hearing, for disqualification of Spitz should it become apparent that Spitz will be called, in good faith, as a witness at the trial of this matter.